***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. Plaintiff suffered a compensable injury occurring on or about August 28, 2007. On that date an Employer-Employee relationship existed between the named Employer and the Employee.
3. Travelers is the Carrier on the risk.
4. Plaintiff's average weekly wage is $509.97, and plaintiff's compensation rate is $339.98.
5. The parties stipulated into evidence all Industrial Commission Forms, the Employee Incident Report, Plaintiff's answers to Defendant's First Set of Interrogatories and Request for Production of Documents, the Plaintiff's medical records, and Plaintiff's recorded statement.
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a Hispanic worker, legally present in the United States, who has been working for Defendant as a production worker since 1997. Plaintiff completed the 6th grade in Mexico.
2. On August 28, 2007, while at work, Plaintiff was struck by a forklift. She was taken to the Emergency Room for examination at CMC Lincolnton. The clinical impression was that she had a concussion, injury to her left hand, a back injury, and an injury to her left shoulder. X-rays revealed mild lumbar spondylosis.
3. Plaintiff was out of work until September 1, 2007. She returned to work and has worked within any restrictions given her and has missed work only to go to the doctor's office or seek medical attention. There are some days that she has to leave work early because of her pain. *Page 3 
Plaintiff has pain in her neck, back, and shoulder. Plaintiff denies any injury or accident to her since August 28, 2007.
4. Plaintiff required an interpreter to present her testimony before the Deputy Commissioner. Her inability to explain herself in English made diagnosis and treatment of her condition more challenging.
5. On September 4, 2007, plaintiff presented to Dr. Harmaty with Carolina Urgent Care with left arm and shoulder pain. Dr. Harmaty referred plaintiff to physical therapy and assigned restrictions of standing and sitting one to three hours and no lifting over ten pounds. On September 11, 2007, plaintiff presented again to Dr. Harmaty with back pain.
6. On September 20, 2007, plaintiff was seen by Physicians Assistant Rhonda Ardelean with Carolina Urgent Care for persistent low back pain and spasm. Physical exam revealed positive bilateral paravertebral tenderness in lower lumbar region. Physicians Assistant Ardelean reinstated plaintiff's physical therapy and prescribed medications.
7. On September 28, 2007, plaintiff, with an interpreter present, reported to
Physicians Assistant Roy Waronsky symptoms of upper back pain, numbness in right arm, right to left, lower back pain, pain in right hip down to the side of her right thigh and down, and pain down to her first three toes. Physicians Assistant Waronsky noted that plaintiff had been with defendant-employer for eleven years and has never had an injury and referred plaintiff to an orthopedic physician.
8. On October 8, 2007, plaintiff was first seen by Dr. John dePerczel, an orthopaedic surgeon with Carolina Orthopaedic Specialist. At that time, she was complaining of back pain, neck pain, right shoulder pain, right arm pain, and right leg pain. Dr. dePerczel noted that plaintiff had continued to work within her restrictions. Dr. dePerczel noted obvious spasm and *Page 4 
tenderness of the right trapezius. Physical examination revealed limited neck motion producing right-sided pain. Plaintiff had limited back motion which produced fairly severe sciatica on the right with flexion and straight leg raising. Plaintiff also tested positive on the Phalen's test and the Tinel's test to the right carpal tunnel. The Phalen's test produced fairly severe right neck and shoulder pain. is initial diagnosis was contusion of the right neck and shoulder, contusion of the right arm with median nerve inflammation and carpal tunnel syndrome, and contusion of the low back with right sciatica. Dr. dePerczel referred plaintiff for never conduction studies on his arms and an MRI of the lumbar spine for a question of right sciatic nerve injury or disc herniation.
9. On October 23, 2007, Dr. dePerczel noted that the nerve conduction studies and MRI had not been approved. On November 26, 2007, plaintiff returned to Dr. dePerczel with complaints of left neck and shoulder pain and hand numbness. Plaintiff tested positive for sciatica and had muscle spasm in the left neck and shoulder. Plaintiff was diagnosed with carpal tunnel syndrome, right worse than left, sprain of the left neck and shoulder, and right sciatica with question of lumbar HNP. Dr. dePerczel again recommended nerve conduction studies of the arms and an MRI of the low back. Plaintiff was continued on light duty.
10. On December 24, 2007, Dr. dePerczel noted that plaintiff still had some pain, but overall feels better. As plaintiff was no longer complaining of hand numbness and there was no indication of nerve compression or sciatica, he did not feel that the nerve conduction studies or the MRI were necessary at that point. He continued plaintiff on light duty.
11. On January 28, 2008, plaintiff reported to Dr. dePerczel that her pain was getting worse, especially with left arm pain radiating onto the left hand. Dr. dePerczel noted concern of a pinched nerve because plaintiff now had pain into the left shoulder and arm with axial *Page 5 
compression of the head. He further notes that these pains were consistent with radicular pain from the neck. Dr. dePerczel ordered an MRI and continued plaintiff on light duty restrictions.
12. On March 3, 2008, plaintiff reported that her neck and arm pain hurt more than anything. Dr. dePerczel diagnosed plaintiff with possible cervical disc herniation and severe left neck and arm pain and again strongly recommended an MRI. On April 3, 2008. Dr. dePeczel recommended nerve conduction studies of the arms and an MRI.
13. On April 12, 2008, plaintiff underwent an MRI of her lumbar and cervical spine which revealed a bulging disc at C4-5. Dr. dePerczel opined that the MRI results were consistent with plaintiff's right shoulder blade pain and right sided numbness and referred plaintiff to Dr. Tiffany for cervical and arm pain. Plaintiff's low back MRI was normal.
14. On April 21, 2008, plaintiff underwent a nerve conduction study which revealed moderate focal entrapment of the right median nerve at or about the wrist affecting sensory and motor fibers.
15. On May 8, 2008, Dr. Tiffany diagnosed plaintiff with thoracic radiculopathy and herniated disk, cervical radiculopathy and herniated disk, and lumbar radiculopathy and herniated disk. Dr. Tiffany referred plaintiff for a thoracic MRI which showed degenerative disk disease. Dr. Tiffany testified that some degenerative changes are asymptomatic and become symptomatic and painful following a traumatic event. Dr. DePerczel opined that although Dr. Tiffany's diagnoses varied in terminology, they were consistent with his own diagnoses of plaintiff.
16. Plaintiff continued to treat with dr. dePerczel and Dr. Tiffany and received several epidural steroid injections. *Page 6 
17. On August 12, 2008, Dr. dePerczel noted that plaintiff continued to have left neck, shoulder, and arm pain and that plaintiff was experiencing numbness in her right hand. He advised plaintiff that she had a small disc herniation on the right, chronic strain of the neck, shoulders, and back, and right carpal tunnel syndrome. He further noted that the carpal tunnel syndrome predated but was probably aggravated by the accident.
18. On October 7, 2008 Dr. dePerczel noted chronic strain with myofascitis of the neck, shoulders, and back and right carpal tunnel syndrome. He indicated that plaintiff needed to undergo a surgical release for the carpal tunnel. On November 13, 2008, Dr. dePerczel noted that plaintiff was to return when she was ready to proceed with the carpal tunnel release surgery.
19. On October 14, 2008, plaintiff was treated by Dr. Geissele on referral by Dr. Tiffany. Dr. Geissele referred plaintiff back to Dr. Tiffany for facet treatments which included medial blocks and radio-frequency ablation. Plaintiff reported improvement from these
20. Dr. Tiffany opined that plaintiff's work injury caused the injuries for which he treated plaintiff and that plaintiff's arthritis was aggravated by her work injury. According to Dr. Tiffany, plaintiff's work injury caused her arthritis to become symptomatic. Dr. Tiffany further opined that plaintiff has not yet reached maximum medical improvement and requires addition medical treatment for an indefinite period of time.
21. Dr. dePerczel agreed with Dr. Tiffany and opined that plaintiff's work injury involving a forklift accelerated, aggravated, or caused plaintiff's symptoms for which he treated plaintiff.
22. The Full Commission finds based upon the greater weight of the credible evidence that plaintiff suffered injuries to her neck, back, and shoulders that required medical treatment as a result of her August 28, 2007 work injury. *Page 7 
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident which arose out of and in the course of her employment on August 28, 2007. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident on August 28, 2007, plaintiff sustained injuries to her neck, back, and shoulder. Click v. Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980).
2. Plaintiff is entitled to have Defendants pay for all medical compensation related to her compensable injury by accident incurred or to be incurred that would reasonably effect a cure or provide or lessen plaintiff's period of disability. This includes treatment to plaintiff's neck and upper back. N.C. Gen. Stat. § 97-25. Plaintiff is entitled to have medical compensation in the future for as long as needed and prescribed by the treating physicians. Id.
3. Plaintiff has not reached maximum medical improvement but, at such time as she does, is entitled to compensation for her disability as may be shown. N.C. Gen. Stat. § 97-31.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Defendants shall pay or cause to be paid all medical compensation related to Plaintiff's compensable injury by accident incurred or to be incurred that would reasonably effect a cure or provide or lessen Plaintiff's period of disability, including reimbursement to the *Page 8 
Plaintiff for out of pocket expenses. This includes treatment of Plaintiff's neck, shoulders, and upper back.
2. Defendants shall pay such permanent disability as may be shown when the Plaintiff reaches maximum medical improvement.
3. Defendants shall pay the costs of this proceeding, which include an expert witness fee of $400.00 to Dr. Myron B. Harmaty, $450.00 to Dr. Mark Tiffany and $500.00 to Dr. John L. dePerczel.
This the 16th day of December 2009.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER